## CIRCUIT COURT OF LOUDOUN COUNTY

Primrose
Development Corp. et al.

v.

Benchmark
Acquisition Fund I, L.P.

May 14, 1998

Case No. (Law) 19161

BY JUDGE JAMES H. CHAMBLIN

This cause is before the Court on the Plea in Bar of Primrose Development Corporation ("Primrose") and Bondy Way Development Corporation ("Bondy Way"), the Plea in Bar and the Adopted and Restated Plea in Bar of NV Kettler, Limited Partnership, Potomac Lakes, Limited Partnership, and Kettler & Scott, Inc. ("the Kettler Defendants") to various Counts of the First Amended Counterclaims of Benchmark Acquisition Fund I, Limited Partnership ("Benchmark").

After consideration of the memoranda, the authorities cited, and the argument of counsel on April 14, 1998, the Pleas in Bar are sustained but only to the extent as hereinafter provided.

From the bench on April 14th, I ruled that any claim at law by Benchmark for breach of the Master Cable Television Cascades Service Agreement ("Agreement") based upon the granting to other utility companies of certain easements containing television language is barred by the five-year statute of limitations of Virginia Code § 8.01-246. The earliest easement was granted in April 1989, and the latest easement was granted in August 1991.

Under Virginia Code § 8.01-230, the right of action for breach of contract accrues when the breach occurs. Benchmark alleges that the granting of the

easements represents breaches of the Agreement. Therefore, a right of action accrued as each easement was granted. The latest easement was granted in August 1991. Therefore, the five-year statute of limitations ran in August 1996. This suit was not filed until May 1997.

Virginia Code § 8.01-230 clearly states that the right of action for breach of contract accrues when the breach occurs. It goes on to specifically state that it does not accrue when the resulting damage is discovered. Therefore, it makes no difference that Benchmark did not actually learn of the easements until March 1994. Further, as a matter of law, Benchmark did have notice of the easements when each was recorded. Once a deed is recorded, the admission to record is notice to the entire world. *Jones v. Folks,* 149 Va. 140, 144 (1927). The last easement was recorded in September 1991, more than five years before this suit was instituted.

Benchmark, however, asserts that it seeks equitable relief and that its claims are not barred by the statute of limitations. Also, it argues that Primrose, Bondy Way, and the Kettler Defendants are equitably estopped from asserting the statute of limitations. These issues were taken under advisement.

The Plea in Bar of Primrose and Bondy Way to a significant portion of Counts II, III, IV, and V of the Amended Counterclaims is adopted by the Kettler Defendants in its Adopted and Restated Plea in Bar to Counts III, IV, and V of the Amended Counterclaims. These two Pleas in Bar concern only the alleged breach of the Agreement by the granting to other utility companies of certain easements containing television language.

Count II is a breach of contract claim against Primrose and Bondy Way. In it, Benchmark seeks the return of payments it made to Primrose and Bondy Way under the Agreement, consequential damages in an amount by which the value of Benchmark's cable television system has been diminished by the breach of the Agreement by Primrose and Bondy Way and for rescission of the Agreement.

As to Benchmark's claim for a return of the money paid under the Agreement, *Belcher v. Kirkwood,* 238 Va. 430 (1989), is controlling. At pages 432 and 433, the Virginia Supreme Court stated:

Although this case is now a suit in equity, Kirkwood's claims are cognizable at law, even if based on the theory of unjust enrichment. In a case in which we permitted a recovery at law for money paid under a mistake of fact, we quoted Lord Mansfield's decision in the law action of *Moses v. Macferlan,* 2 Burrow 1005, 1012 (1760): "This kind of

equitable action, to recover back money, which ought not in justice to be kept, is very beneficial and therefore much encouraged. It lies only for money which, *ex aequo et bono*, the defendant ought to refund ... [I]t lies for money paid by mistake; or upon a consideration which happens to fail; or for money got through imposition (express or implied); or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to the laws made for the protection of persons under those circumstances. In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." *Robertson v. Robertson*, 137 Va. 378, 381-82, 119 S.E. 140, 140-41 (1923). See *Kern v. Freed Co.*, 224 Va. 678, 680-81, 299 S.E.2d 363, 364-65 (1983).

It is a well-established principle uniformly acted upon by courts of equity that in respect to the statute of limitations equity follows the law; and if a *legal demand* be asserted in equity which at law is barred by statute, it is equally barred in equity." *Sanford v. Sims*, 192 Va. 644, 649, 66 S.E.2d 495, 498 (1951) (emphasis added); see also, *Marriott v. Harris*, 235 Va. 199, 212-13, 368 S.E.2d 225, 231 (1988). Therefore, the statute of limitations applicable to oral contracts bound the trial court in its ruling on the defense of laches.

Regardless of Benchmark's contention that its claims are equitable, the claim for return of the payments is one cognizable at law. Benchmark would have been damaged by the amount of the monies it paid under the Agreement if it was breached at its execution because of the prior granting of the easements to other utility companies. It is a legal demand asserted in equity barred at law by the statute of limitations, and, for the reasons stated above, is equally barred in equity under the doctrine of laches.

The consequential damage claim is a claim for damages for breach of contract. It is a claim cognizable at law. It is, likewise, barred by the five-year statute of limitations.

The request for rescission is solely for equitable relief. The statute of limitations applicable to law actions would not, therefore, apply. However, the doctrine of laches could be applicable, but its application cannot be decided until there has been a full and complete opportunity for all parties to do discovery and to present evidence to the Court on the issue. Also, if a court has equity jurisdiction over a matter, it also has the authority to provide

complete relief, even in the form of ancillary damages, in order to do equity to all parties.

The return of monies paid or consequential damages may be appropriate ancillary relief to a grant of rescission, but that cannot be determined until the case is fully developed on its merits. Benchmark is, therefore, not precluded from seeking such ancillary relief in its request for rescission of the Agreement.

Count III asks for the same relief as in Count II, but it is requested as to Primrose, Bondy Way, and the Kettler Defendants for an alleged breach of a warranty in the Agreement. Considering that the claims are the same in both counts, my ruling as to Count III is the same as to Count II.

Count IV is a claim as to Primrose, Bondy Way, and the Kettler Defendants for unjust enrichment. Benchmark alleges that they accepted its payments under the Agreement with full knowledge that they could not provide it with the full benefits under the Agreement, and it would be inequitable for the monies to be retained. It again characterizes the claim as one for restitution. For the reasons stated above as to the restitution claims made in Counts II and III, this claim is a legal demand asserted in equity and is time-barred as to any claim based on the granting of the easements.

Count V is a request for rescission of the Agreement and return of the payments because of a failure of consideration. As stated above, this is a request for equitable relief with ancillary relief which cannot be determined until the case is fully developed on its merits.

The Kettler Defendants also filed a Plea in Bar to Count I of the Amended Counterclaims, which seeks return of the payments made to the Kettler Defendants, consequential damages, and rescission. They assert that all the allegations in Count I relating to them arose more than five years before Benchmark filed its Counterclaim against them. The agreement was executed in March 1990, and the Kettler Defendants assigned their interests in the Agreement to Primrose and Bondy Way in September 1990. The assignments were permissible under the Agreement. Benchmark does not challenge the validity of the assignments in its Amended Counterclaim. It merely prefaces its allegations as to the assignments with "on information and belief." This does not entitle Benchmark to argue that the existence of the assignments is a factual issue. Their existence and their validity are deemed facts alleged in the Amended Counterclaims.

There are no allegations in the Amended Counterclaims that the Kettler Defendants did anything after September 1990, except for a vague allegation in paragraph 22, that Benchmark "periodically communicated to and with"

them regarding the design and location of Benchmark's cable television system in Cascades. The allegations of paragraph 22 do not show any breach of the Agreement by the Kettler Defendants.

In September 1990, the Kettler Defendants assigned all their rights and obligations under the Agreement to Primrose and Bondy Way. If the Kettler Defendants breached the Agreement, then it must have occurred before September 1990. Therefore, any claim at law for damages for breach of the Agreement by the Kettler Defendants must have been made before September 1995 under the five-year statute of limitations for written contracts. Benchmark did not file its claims against the Kettler Defendants until August 1997, when it was granted leave to do so by this Court.

Therefore, all legal claims for breach of the Agreement by the Kettler Defendants before September 1990 are time barred.

For reasons stated above, these "legal demands" asserted in equity are also time barred under the doctrine of laches. Further, Benchmark cannot seek rescission of the Agreement against the Kettler Defendants because they no longer have an interest in the Agreement. Whether Benchmark can obtain damages against the Kettler Defendants ancillary to rescission on account of their breach of the Agreement before the assignments is an issue that cannot be decided until the merits of the case are fully developed.

Other issues have been raised by the parties. They include whether Primrose, Bondy Way, and the Kettler Defendants are equitably estopped to assert the statute of limitations in a laches context, whether the discovery rule of Virginia Code § 8.01-230 applies, and the effect of the endorsement of the two Benchmark checks to Primrose and Bondy Way. They do not need to be addressed now. They will be addressed when the facts of the case are fully developed.

The Plea in Bar of Primrose and Bondy Way has been decided only as to any claim by Benchmark for breach of the Agreement because of the granting of the easements. Benchmark has asserted other breaches, but they are not reached by the Plea in Bar of Primrose and Bondy Way. The same applies to the Adopted and Restated Plea in Bar of the Kettler Defendants. The only viable claim remaining for breaches caused by the granting of the easements is the claim for rescission and ancillary damages or other relief, if cognizable in equity.

The Plea in Bar of the Kettler Defendants to Count I of Benchmark's Amended Counterclaims has been decided as to all claims of breaches of the Agreement by the Kettler Defendants. As alleged in the Amended Counterclaims, all the breaches occurred before September 1990. All claims

at law and legal demands asserted in equity for any breach occurring before September 1990 are time barred. The Kettler Defendants will remain in the case only to the extent that they may be liable for damages or other ancillary relief incidental to the equitable relief of rescission.

Benchmark filed on April 14, 1998, a Motion for Evidentiary Hearing in Opposition to Pleas in Bar. The Motion is denied. The facts applicable to the Pleas in Bar can be developed during discovery and at any hearings on the merits. There is no need for a separate evidentiary hearing related solely to the Pleas in Bar.